# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**REGINALD HARRIS (#132398)**                    **CIVIL ACTION**
    **A/K/A REGGIE HARRIS**

**VERSUS**

**BURL CAIN, WARDEN**                    **NO. 12-0297-SDD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 2, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

REGINALD HARRIS (#132398)                          CIVIL ACTION
    A/K/A REGGIE HARRIS

VERSUS

BURL CAIN, WARDEN                                  NO. 12-0297-SDD-RLB


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. The State has filed a response in opposition to the

petitioner's application. In addition, the petitioner has recently filed a Motion to Amend or

Supplement his application and to hold this matter in abeyance while he pursues exhaustion of

state remedies relative to an additional claim in state court (Rec. Doc. 14). There is no need for

oral argument or for an evidentiary hearing relative to these matters.

The petitioner, Reginald Harris, challenges his conviction and sentence, entered in 2005

in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana,

on one count of attempted second degree murder. The petitioner contends (1) that the evidence

was insufficient to support the verdict, (2) that his right to confront the witnesses was violated

when the prosecution introduced hearsay evidence from an out-of-court declarant who did not

testify, (3) that his attorney was ineffective for failing to call witnesses, failing to investigate,

failing to impeach the credibility of a state witness, failing to point out certain matters before the

jury, and failing to suppress the introduction of the referenced hearsay evidence, (4) that the trial

court erred in denying his motion to enroll as co-counsel, (5) that the trial court erred in denying

defense motions to relieve the petitioner's attorney of representation, (6) that the district attorney committed prosecutorial misconduct by presenting false evidence at trial, and (7) that his attorney was ineffective for failing to suppress an out-of-court statement made by a youthful witness who was not accompanied by a parent or guardian.  In his recently-filed Motion to Amend or Supplement, the petitioner seeks to assert an additional claim regarding an application for DNA testing which is pending in the state court relative to certain items of evidence pertinent to his conviction.

Factual Background

On the evening of November 7, 2003, according to evidence adduced at trial, the victim, Alvin Richardson, was at his residence in Baton Rouge, Louisiana, where he lived with Brenda Caston, a woman he described as his "common law wife," and three children, one of whom, Alanna Caston, was the 14-year-old biological child of the petitioner.  According to the testimony of Mr. Richardson, the petitioner telephoned the house that evening and spoke with both Alanna and Mr. Richardson, and Mr. Richardson told the petitioner that the petitioner was not welcome on the premises, apparently because of an abusive telephone call between the petitioner and Brenda Caston earlier that day.  In response, the petitioner allegedly stated, "wait a minute – hold on for a moment – I will be there," and hung up.  *See* Tr. Rec. at p. 252. Approximately three to four minutes later, the petitioner arrived at Mr. Richardson's residence, at which time Mr. Richardson was outside "messing with [his] car." *Id.*  According to Mr. Richardson, the petitioner first knocked on the door to the residence and spoke with Alanna, and then approached Mr. Richardson, who repeatedly asked the petitioner to leave.  The petitioner, however, who appeared to be obviously intoxicated and was using profanity, refused to leave

and, instead, "took a swing" at Mr. Richardson, whereupon Mr. Richardson picked up a piece of glass that he had seen and swung back at the petitioner. According to Mr. Richardson, the petitioner then left the scene, but Mr. Richardson was concerned that the altercation was not over, and he "felt like [his] life was in threat," so he called the emergency 911 operator to report the incident. *See id.* at p. 254. While Mr. Richardson was then standing outside on the porch, speaking with the 911 operator, the petitioner returned in a vehicle and immediately approached Mr. Richardson with a firearm, firing and hitting Mr. Richardson at least three times. Mr. Richardson then retreated into the house and locked himself in the bathroom, but he could hear the petitioner's voice outside the room and so knew that the petitioner had followed him into the residence. Several minutes later, Mr. Richardson exited the bathroom, whereupon he was again attacked. At this point, however, Mr. Richardson's testimony reflects confusion, specifically because he acknowledged that his state of mind at the time was such that he did not specifically remember who attacked him or what happened next. To the contrary, he admits that he was somewhat "blank[ed] out" and was more focused on "getting to the hospital and getting away from some more line of fire," so he "just ran ... just forged [his] way out of the house." *Id.* at 257. He further stated in this context that certain details were told to him by his step-daughter, but he was admonished to provide only the information that he personally recalled. *See id.* at pp. 257-58 and 259. Thus, Mr. Richardson testified that he recalled that the petitioner "was there" when he exited the bathroom, *id.* at pp. 256 and 258, and recalled that somebody "jumped on" him and attacked him as he exited the bathroom, *id.* at pp. 256-57, but he did not realize that he

was being stabbed at that time and could not identify who was attacking him.[1]  He further

clarified, on cross-examination, that he did not actually recall seeing the petitioner upon exiting

the bathroom on the night of the offense, and only recalls hearing the petitioner's voice while he

hid in the bathroom.  *See id.* at p. 284.  It was later determined that, in addition to the gunshot

wounds, Mr. Richardson had sustained multiple stab wounds as he exited the residence.

Detective Mark Beck, who was a uniform patrol officer with the Baton Rouge Police

Department on the night of the offense, testified that he was dispatched to the scene and arrived

to find the injured Mr. Richardson standing in his driveway and reporting that he had been shot

several times.  Officer Beck called for a medical response unit, which arrived quickly and took

Mr. Richardson immediately to the hospital.  Officer Beck testified that shortly after the medical

unit left, he was approached from the yard by a young female who stated that she had seen who

had shot Mr. Richardson.  The young female, identified as Alanna Caston, was in an agitated

state, "crying, very upset, scared," and volunteered to Officer Beck, without prompting, that "her

daddy had shot her step daddy."  *See id.* at p. 298.  According to Officer Beck's report, Alanna

Caston further informed the officer that "she had witnessed her father [the petitioner] arrive in ...

some type of white four-door car, and when he got out of the car, he immediately confronted her

stepfather [Mr. Richardson] and fired ... at least five shots."  *See id.* at pp. 299-300.

Finally, additional evidence was adduced regarding photographs and physical evidence

secured from the scene of the offense, including evidence that the door to the residence had been

---

1.  There is some indication in the record that one or more additional individuals, none of
whom were ever identified by police officials, may have entered Mr. Richardson's residence
after he retreated to the bathroom.  Specifically, Mr. Richardson's testimony includes a reference
to having heard the voice of a person other than the petitioner as he hid in the bathroom, and he
referred to being attacked by "some  people that was there" as he attempted to escape the house.

forced open and evidence reflecting a large amount of blood in the bathroom of the residence, a small paring knife found on the floor of the living room, a single spent bullet casing, and a blood-stained shirt with an apparent knife hole. The firearm utilized during the offense was never recovered. The petitioner's attorney also pointed out that no piece of broken glass consistent with that allegedly utilized by Mr. Richardson was found at the scene. Notwithstanding, the testimony of the investigating police officers was that they were not specifically searching for this type of evidence on the night of the offense.

<u>Procedural History</u>

The petitioner was not apprehended until December 11, 2003, when he turned himself in at a police station. The petitioner was then charged, by Felony Bill of Information filed in February, 2004, with one count of attempted second degree murder. A jury trial was conducted in August, 2005, and the petitioner was convicted as charged.[2] He was thereafter sentenced, on November 18, 2005, to fifty (50) years in confinement, without the benefit of probation, parole or suspension of sentence. The State thereafter filed a supplemental bill of information charging the petitioner to be a multiple offender. After a hearing conducted on January 23, 2006, the trial court adjudicated the petitioner to be a fourth felony offender, vacated the prior sentence, and re-sentenced the petitioner to sixty (60) years in confinement, without the benefit of probation, parole or suspension of sentence.

---

2. The record reflects that, after an exchange between the petitioner and the trial judge during *voir dire*, at which time the trial judge admonished the petitioner regarding his disruptive behavior, the petitioner voluntarily absented himself from the courtroom and listened to the proceedings from a holding cell. *See* Tr. Rec. at pp. 7 and 212-18. During the testimony of the State's first witness, however, the petitioner was returned to the courtroom for the purpose of identification by the victim, Mr. Richardson, and thereafter elected to stay for the remainder of the trial. *See id.* at pp. 9 and 265-66.

The petitioner appealed his conviction, asserting that the evidence was insufficient to support the verdict. On November 3, 2006, the Louisiana Court of Appeal for the First Circuit affirmed the conviction, multiple offender adjudication and sentence. *See State v. Harris,* 2006 WL 3108216 (La. App. 1st Cir. Nov. 3, 2006). The petitioner thereafter sought writs before the Louisiana Supreme Court, which Court denied review on September 14, 2007. *See State v. Harris*, 963 So.2d 995 (La. 2007).

Approximately nine months later, on or about June 9, 2008,[3] the petitioner filed an application for post-conviction relief ("PCR") in the state trial court, wherein he asserted six (6) claims. Specifically, the petitioner asserted that (1) his right of confrontation was violated when the State introduced hearsay evidence regarding statements made by an out-of-court declarant, Alanna Caston, who did not testify at trial, (2) he was provided with ineffective assistance of counsel when his attorney failed to call witnesses, failed to investigate, failed to impeach the credibility of a state witness, and failed to point out certain matters before the jury, (3) the trial court erred by failing to grant the petitioner's motion to enroll as co-counsel, (4) the trial court erred by denying motions by the petitioner and his attorney to be relieved of representation, (5) the prosecution engaged in misconduct by presenting false testimony at trial, and (6) the

---

3. Although the petitioner's *pro se* application for post-conviction relief was docketed as filed in the state trial court on June 17, 2008, the Court will apply the "mailbox rule" articulated in *Houston v. Lack*, 487 U.S. 266, 271 (1988), pursuant to which a *pro se* petitioner is deemed to have filed his habeas corpus pleadings on the date that he places same in the prison mailing system for transmission to the court and not on the date that the pleadings are ultimately docketed by the receiving court. Accordingly, inasmuch as the petitioner apparently signed his supplemental application on June 9, 2008, and presumably gave it to prison officials for filing on that date, the Court will utilize that date as the presumptive date of filing. In addition, in hereafter referencing the dates of filing of the petitioner's various pleadings in the state courts and in this Court, the Court will utilize the dates that the petitioner signed his respective pleadings as the date of filing thereof in the respective courts.

petitioner was provided with ineffective assistance of counsel when his attorney failed to suppress a later out-of-court statement made by Alanna Caston to police officers, which statement was given without the presence of an adult or guardian.

After the filing of the petitioner's application, the State asserted a procedural objection relative to the petitioner's fourth PCR claim, above (his fifth claim in this habeas proceeding), *i.e.*, that the trial court erred by denying motions by the petitioner and his attorney to be relieved of representation. This procedural objection was sustained by the state trial court on August 13, 2008.[4] The state court Commissioner thereafter recommended dismissal of the remaining five (5) claims on substantive grounds on August 5, 2010. The state trial judge accepted the Commissioner's recommendation on January 14, 2011, and dismissed the petitioner's post-conviction relief application. The petitioner thereafter sought further timely review in the Louisiana appellate courts and, on June 7, 2011, and March 30, 2012, respectively, the appellate courts denied such review. *See State ex rel. Harris v. State*, 85 So.3d 109 (La. 2012).

Finally, on or about May 17, 2012, the petitioner filed the instant application for habeas corpus relief in this Court. In addition, on or about March 11, 2014, almost two years later, as previously noted, the petitioner nas now filed a Motion to Amend or Supplement his habeas corpus application, seeking to add a new claim herein. Specifically, the petitioner asserts that he has now filed a PCR application in the state district court seeking to obtain DNA testing of

---

4. The state court record reflects that the State also asserted procedural objections in connection with the petitioner's five (5) additional PCR claims, but the trial court rejected the State's assertions. Although the State thereafter filed applications for supervisory review relative to this determination in the state appellate courts, the appellate courts denied review in connection with these applications, with the Louisiana Supreme Court denying review on November 20, 2009. *See State v. Harris*, 25 So.3d 783 (La. 2009).

certain items of evidence pertinent to his criminal trial, and he wishes to include this claim in the instant habeas corpus proceeding. As discussed hereafter, the referenced amendment should not be allowed.

<u>Legal Analysis</u>

<u>The Petitioner's Motion To Amend Or Supplement
His Habeas Corpus Application Should Be Denied</u>

Pursuant to 28 U.S.C. § 2242, a habeas corpus application "may be amended ... as provided in the rules of procedure applicable to civil actions." Thus, this Court looks to Rule 15 of the Federal Rules of Civil Procedure when considering a motion to amend a habeas corpus petition. *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (recognizing that Fed. R. Civ. P. 15 is applicable to amendments in habeas corpus proceedings). Under Rule 15, there is "a strong bias in favor of granting a motion for leave to amend." *FDIC v. Conner*, 20 F.3d 1376 (5th Cir. 1994). However, although "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), such leave "is by no means automatic." *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (internal quotation marks omitted). Relevant factors which the Court may consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.* Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Production Co.*, 234 F.3d 863, 872 (5th Cir. 2000).

Considering the foregoing, the Court finds that the petitioner's proposed amendment should be denied. Specifically, pursuant to 28 U.S.C. § 2244(d)(1), the petitioner was required to commence his federal habeas corpus proceeding within one year of the finality of his

conviction, not counting the time during which his state post-conviction or other collateral review proceedings were pending before the state courts. Under this statute, a federal habeas corpus application that is submitted more than one year after such finality, with few exceptions, is subject to dismissal as untimely. *See, e.g., Manning v. Epps*, 688 F.3d 177 (5th Cir. 2012) (rejecting a petitioner's assertion that the one-year period had been statutorily or equitably tolled). Moreover, a new but untimely claim asserted in an amendment to an existing federal habeas corpus proceeding will not relate back to the filing of the original application if the amendment asserts "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix, supra*, 545 U.S. at 650 (finding that "[a]n amended habeas petition ... does not relate back (and thereby escape [the statutory] one-year time limit) when it asserts a new ground for relief" which does not meet this criteria).

In the instant case, the petitioner's conviction became final on or about December 12, 2007, ninety days after the Louisiana Supreme Court denied review on September 14, 2007, in connection with his direct appeal. *See State v. Harris*, 963 So.2d 995 (La. 2007). *See also Beck v. Thaler*, 398 Fed. Appx. 65 (5th Cir. 2010) (noting that "[d]irect review is generally concluded ... by the expiration of the 90 days allowed for a petition of certiorari to the Supreme Court" or by a ruling from the Supreme Court in response to such petition). The petitioner thereafter commenced state post-conviction review proceedings on June 9, 2008 (allowing approximately 180 days to elapse of the one-year period), and the limitations period was thereafter statutorily tolled while he pursued those PCR proceedings through denial by the Louisiana Supreme Court on March 30, 2012. *See* 28 U.S.C. § 2244(d)(2). The petitioner thereafter allowed an additional 48 days to elapse and then timely filed his federal habeas corpus application in this Court on or

about May 17, 2012, at which time approximately 4½ months remained on the one-year clock. The petitioner's new claim, therefore, asserted almost two years later in the instant Motion to Amend filed in March, 2014, appears to be untimely unless it relates back to the date of original filing.[5]  The Court finds, however, that the petitioner's new claim – regarding a separate state court proceeding to authorize or undertake DNA testing of available items of evidence – is fundamentally different, in both time and type, from the claims asserted in the petitioner's original habeas corpus application.  Leave to amend the habeas application, therefore, is appropriately denied because, in the absence of relation back, the amendment is untimely.  *See United States v. Gonzalez,* 592 F.3d 675, 681 (5th Cir. 2009) (upholding the denial of a motion to amend a habeas corpus application where the amendment would be futile because the claims asserted therein would not relate back to the original application and so were untimely); *Horne v. Cain*, 2010 WL 1332977, *3 (E.D. La. Feb. 24, 2010) (denying a motion to amend a habeas corpus petition because, "[t]o be timely, a claim asserted in an amended petition must relate back to a claim in a timely filed petition or the amendment must itself be filed within the one-year federal limitations period").  Accordingly, the petitioner's Motion to Amend or Supplement should be denied.[6]

_____

5.  The one-year limitations period is not tolled or interrupted during the time that a petitioner's *federal* habeas corpus proceedings are pending.  *See Duncan v. Walker*, 533 U.S. 167, 181 (2001).

6.  Further, considering this Court's conclusion that the amendment of the petitioner's habeas corpus application is unwarranted, his request for a stay of this proceeding while he pursues exhaustion of state court remedies relative thereto is similarly subject to denial.

Procedural Default As To The Petitioner's Claim Regarding
The Denial Of His Motion To Relieve Defense Counsel From Representation

It next appears that the State asserts that the petitioner's fifth claim before this Court (which was asserted as his fourth PCR claim in state court) – that the state trial judge erred in denying the petitioner's motions to relieve defense counsel from representation – should be denied on the basis of procedural default. In this regard, the record reflects that the state trial judge granted a procedural objection relative to this claim on August 13, 2008, relying upon article 930.3 of the Louisiana Code of Criminal Procedure, which article limits the grounds upon which a petitioner may seek post-conviction relief. Inasmuch as the state appellate courts thereafter denied review of the petitioner's writ applications without comment, it appears that the last state court to address this claim clearly relied upon a state procedural rule in denying consideration thereof.

When a state court decision to deny post-conviction relief rests on a state procedural basis that is independent of the federal questions raised by the petitioner and is adequate to support the judgment, the federal court lacks jurisdiction to review the merits of the petitioner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Moore v. Roberts*, 83 F.3d 699, 701 (5th Cir. 1996). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." *Coleman v. Thompson, supra*, 501 U.S. at 729-730. The basis for the application of the doctrine is grounded in concerns of comity and federalism and is related to the requirement that a habeas petitioner first provide the state courts with an opportunity to address and correct violations of a prisoner's federal rights:

Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the States's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.... In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731-32.

For the independent and adequate state ground doctrine to apply, the state court adjudication of a habeas petitioner's claim must have been, as here, explicitly based on a state procedural rule. *Moore v. Roberts, supra*, 83 F.3d at 702. "The procedural default doctrine presumes that the 'state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment.'" *Id., quoting Sones v. Harbett*, 61 F.3d 410, 416 (5th Cir. 1995). The petitioner can rebut this presumption only by establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by (1) demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) demonstrating that "failure to consider the claims will result in a fundamental miscarriage of justice." *Id. See also Coleman v. Thompson, supra*, 501 U.S. at 750. The petitioner has made no attempt to address this cause and prejudice standard and no attempt to show that article 930.3 is not regularly followed by the Louisiana courts. Accordingly, the Court is precluded from consideration of this claim. *See Marks v. Terrel*, 2014 WL 1246065, *10 (E.D. La. Mar. 24, 2014) (finding La. Code Crim P. art 930.3 to be sufficient to support an independent and adequate bar to habeas consideration); *Hughes v. Keith*, 2014 WL 67587, *7 (E.D. La. Jan. 8, 2014) (same).

<u>Substantive Review Of The Petitioner's Remaining Claims</u>

Turning to a consideration of the petitioner's remaining claims, the standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Under this statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the petitioner's case or reaches a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See also Williams v. Taylor, supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas relief.

The Petitioner's Claim Regarding The Alleged
<u>Insufficiency Of The Evidence Is Without Merit</u>

The standard for testing the sufficiency of the evidence on federal habeas review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989). This standard of review applies in both direct and circumstantial evidence cases. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990). In reviewing the sufficiency of the evidence under this standard, the federal habeas court must defer to the state court fact-finder's evaluation of the credibility of witnesses and the resolution of conflicts in the evidence. *Knox v. Butler, supra*, 884 F.2d at 851. *See also Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002); *Hosey v. Goff*, 2013 WL 1500883, *2 (S.D. Miss. March 11, 2013). Further, the federal habeas court's consideration of the sufficiency of the evidence is limited to a review of the record evidence adduced at the petitioner's state court trial. *Ramirez v. Dretke,* 398 F.3d 691, 694 (5th Cir. 2005); *Knox v. Butler, supra*, 884 F.2d at 852 n. 7. State law defines the substantive elements of the offense, and a state judicial determination that the evidence was sufficient to establish the elements of the offense is entitled to great weight on federal habeas review. *Dickinson v. Cain,* 211 F.3d 126, *5 (5th Cir. 2000); *Hawkins v. Lynaugh*, 844 F.2d 1132, 1134 (5th Cir. 1988).

In attacking the sufficiency of the evidence in this case, the petitioner does not attempt to assert that he did not in fact shoot and stab the victim, Alvin Richardson, on the night of the incident. Instead, the basis for the petitioner's assertion in this context is his contention that the

evidence adduced at trial establishes that Mr. Richardson was in fact the aggressor during the altercation and that the petitioner's actions were therefore justified because he acted in self-defense.

In Louisiana, second degree murder is defined as "the killing of a human being ... when the offender has a specific intent to kill or to inflict great bodily harm," La. R.S. 14:30.1. To establish guilt in connection with the offense of *attempted* second degree murder, however, it is necessary for the jury to conclude, not just that the criminal defendant had the specific intent to inflict great bodily harm, but that the criminal defendant had the specific intent to kill. *State v. Bishop*, 835 So.2d 434, 437 (La. 2003). Specific intent may be inferred from the circumstances surrounding the offense, and the conduct of the petitioner in shooting at a person may support such an inference. *State v. Butler,* 322 So.2d 189, 194 (La. 1975); *State v. Scott*, 973 So.2d 927, 931 (La. App. 2d Cir. 2007). Notwithstanding, a petitioner may assert that his actions were legally justified under Louisiana law. As explained by the Louisiana Court of Appeal for the First Circuit on direct appeal:

> The fact that an offender's conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. La. R.S. 14:18. Louisiana Revised Statute 14:19 provides, in pertinent part:
>
>> The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense....
>
> In a non-homicide situation, a claim of self-defense requires a dual inquiry: first, an objective inquiry into whether the force used was reasonable under the circumstances, and, second, a subjective inquiry into whether the force used was apparently necessary. For a defendant's actions to be justified, the force used must be reasonable under the circumstances and necessary to prevent an imminent assault.... A person who is the aggressor or who brings on the difficulty cannot claim the right of self-defense unless he

withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.

*State v. Harris, supra*, 2006 WL 3108216 at *2.  (Citations omitted).

In support of his contention that he acted in self-defense, the petitioner asserts that he arrived at the residence of the victim, Alvin Richardson, on the evening of November 7, 2003, solely for the purpose of picking up his daughter Alanna, who resided at that location with the girl's mother.  The petitioner further asserts that he and Richardson had recently been involved in a verbal altercation over the telephone and that this altercation continued when the petitioner arrived at the residence.  During the resulting heated argument, Richardson picked up a piece of glass (or a knife according to the petitioner) and swung it at the petitioner.  According to the petitioner, this admitted use of a "deadly weapon" by Richardson justified the petitioner's subsequent "reasonable degree of force to defend himself."

Notwithstanding the petitioner's assertions, he disregards the impact of additional undisputed testimony that reflects that after the initial brief physical encounter between the petitioner and Richardson outside the residence, the petitioner left the scene of the incident.  Convinced that the altercation was not over, Richardson utilized a telephone to call 911 and report the incident, telling the operator that he "did not know how much further it was going to go."  While Richardson was still on the telephone, the petitioner returned to the scene with a firearm and began shooting, striking Richardson multiple times.  Richardson retreated into the residence and hid in the bathroom, and the petitioner followed Richardson into the house.  When Richardson emerged from the bathroom, Richardson was attacked again, this time with a knife, and Richardson sustained multiple stab wounds.  The investigating police detective testified that, upon arrival at the residence, he was informed by the petitioner's daughter, Alanna Caston, who

was crying and scared, that "her daddy shot her step daddy."

Based on the foregoing, the state appellate court found, viewing the evidence in the light most favorable to the prosecution, that:

> [A]ny rational trier of fact could have concluded that defendant did not act in self-defense in repeatedly shooting and stabbing the unarmed victim.... Even if Richardson initially attacked defendant with the broken glass bottle, the defendant's action of leaving the scene, returning with a loaded weapon, and encountering Richardson, ... clearly placed defendant in the role of the aggressor. As the aggressor, defendant is not entitled to a claim of self-defense. Furthermore, the jury could have reasonably concluded ... that defendant's actions of repeatedly shooting and stabbing Richardson, who was then unarmed, were not reasonable under the circumstances or apparently necessary.

*State v. Harris, supra*, 2006 WL 3108216 at *3-4.

It is not this Court's function to determine what the jury could have found if only it had viewed the evidence differently. Instead, the Court's role is to determine whether the evidence, viewed in a light most favorable to the prosecution, was sufficient to prove every element of the crime beyond a reasonable doubt. Further, as noted above, this Court is limited to determining whether the Louisiana courts unreasonably applied the due process standards of *Jackson v. Virginia, supra*, in affirming the petitioner's conviction. Under 28 U.S.C. § 2254(e)(1), a determination of a factual issue shall be presumed correct, and the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence.

In light of the foregoing standard, the Court finds no unreasonable application of *Jackson v. Virginia* and the Due Process Clause. Viewing the evidence in the light most favorable to the prosecution, the jury could have believed, as found by the state appellate court on direct appeal, that the petitioner left the scene of the altercation and returned with a loaded weapon which he then used to shoot the victim multiple times, and that these actions were legally unjustified and were undertaken with the specific intent to kill. Accordingly, this Court is unable to conclude

17

that the state court unreasonably applied the standard set forth in *Jackson v. Virginia, supra*, and the petitioner's contention is without merit relative to this claim.

The Petitioner's Claim Regarding Alleged<br>
<u>Confrontation Clause Violations Is Without Merit</u>

The petitioner next contends that his constitutional right to confront the witnesses against him was violated when (1) Alvin Richardson testified at trial regarding matters which he did not recall but had learned from Alanna Caston, and (2) the investigating police detective testified regarding statements made by Alanna Caston at the scene of the offense.

First, with regard to the testimony of Alvin Richardson, the Court agrees with the finding of the state court Commissioner that no confrontation clause violation occurred, specifically because there was no specific part of Richardson's testimony that derived from information provided by Alanna Caston. In this regard, Richardson testified that, due to a poor recollection of events occurring after he was shot three times and after he retreated into the house, he was unable to provide much factual detail regarding what had occurred therein. However, whereas he indicated that he had been provided with information by Alanna Caston, he was admonished at trial to provide only his personal recollections, and he proceeded to do so, giving no specific factual information which clearly derived from Alanna. Thus, the following exchange took place:

A:      I just ran. I just – I just forged my way on out of the house.

Q:      Okay. Did you make it out of the house?

A:      Yes, Ma'am.

Q:      Did anyone attack you as you're trying – you're making it from the bathroom out of the house?

A:      Well, I was being attacked by some people that supposedly had been there.  You know, this was told by my stepdaughter –

Q:      Okay.

A:      – you know.  So I can't really say.

District Attorney:      Objection, your Honor.

The Court:              Hold up.  Sustained.

Q:      So without telling us anything that somebody else told you –

A:      Uh-huh.

Q:      And that's what – you just need to tell the members of the jury what you remember.

A:      Uh-huh.

Q:      Do you remember being attacked when you came out of that bathroom?

A:      Yes, ma'am.

Q:      And did you know Reggie Harris was still in your house?

A:      Yes, ma'am.

Q:      And you said a minute ago you heard his voice, right?

A:      Yes, ma'am.

Q:      You came out and you were attacked again.  Do you know how many people were attacking you at that point?

A:      I really – I really can't say that, ma'am.  All I'm going on is what I heard, my stepdaughter told me.  That's all I'm going on.

Q:      And, again, you're not supposed to testify as to what someone else told you.  That's hearsay.

Tr. Rec. at pp. 257-58.  And later:

Q:      ... [D]o you know exactly who was there when you were being stabbed?

A:      No, I do not.  All I can go by is what my stepdaughter told me.

Q:      Okay.  Other than what your stepdaughter told you, did you hear any voices talking to each other while this was going on?

A:      No, ma'am.

*Id.* at p. 260.  Thus, although Mr. Richardson testified that he had been provided with unspecified information by Alanna Caston, it does not appear that he in fact imparted any substantial part of that information to the jury.  The most which may be gleaned from the above exchange is that Alanna may have advised him that there was more than one person present in the residence, besides the petitioner, who participated in attacking the victim.  This information, however, is in fact consistent with Mr. Richardson's own recollection that, while in the bathroom, he heard a voice other than that of the petitioner.  *See* Tr. Rec. at p. 255, where Mr. Richardson testified that, "when it all boiled down to them breaking inside my house, I heard somebody then.  I heard another voice."  And this information, in any event, was potentially beneficial to the petitioner's case, deflecting responsibility for the stabbing attack onto one or more unidentified third persons.  Accordingly, the Court agrees with the finding of the state court that, with regard to information imparted to Mr. Richardson by Alanna Caston, Mr. Richardson did not repeat this information to the jury in any material respect, and his testimony thus did not result in a violation of the confrontation clause.

Turning to the statement made by Alanna Caston to Officer Mark Beck shortly after the event, the trial court allowed this statement to be presented by Officer Beck, over a defense hearsay objection, pursuant to the "excited utterance" exception to the hearsay rule.  This determination was upheld on post-conviction review upon a finding by the state court Commissioner that, even if admitted in error, the error was harmless, particularly in light of the

identification of the petitioner as the shooter by the victim himself.  The petitioner asserts, however, that the referenced out-of-court statement should not have been admitted, relying upon the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004).

In *Crawford*, the Supreme Court held that an out-of-court statement by a witness that is "testimonial" in nature is barred under the Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.  *Id.* at 54.  The *Crawford* Court explained that the Confrontation Clause applies to witnesses who "bear testimony," and the Court explained that "testimony" is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."  *Id.* at 51 (citation omitted).  For example, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."  *Id.*  The Supreme Court also listed several "core" classes of traditionally-recognized "testimonial" statements as including (1) "*ex parte* in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," (4) "*ex parte* testimony at a preliminary hearing," and (5) "[s]tatements taken by police officers in the course of interrogations."  *Id.* at 51-52.  *See also Davis v. Washington*, 547 U.S. 813, 827 (2006) (finding that the admission of statements made to a 911 operator while events were unfolding

during a domestic dispute did not violate the Confrontation Clause, but suggesting that such statements might be considered to be "testimonial" or might become so as the circumstances develop and "objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution").

In the instant case, the trial court's determination that the statement by Alanna Caston met the standard for admission as an excited utterance was not clearly incorrect.[7] As testified by Officer Beck, the statement was offered by Alanna without prompting by the officer, with the young witness voluntarily approaching the officers shortly after the occurrence of the event. She was noted by the officer to be "crying, very upset, scared," suggesting that she was still under the influence of the stress and excitement caused by the event. Further, the statement was not shown to have been elicited as a result of direct questioning or inquiry posed by Officer Beck and so was not the result of a formalized law enforcement interrogation.[8] And finally, as recognized in *Michigan v. Bryant*, __ U.S. __, 131 S.Ct. 1143, 1158-59 (2011), a statement elicited from a witness even after the occurrence of an event, but when the offense under investigation involves a firearm and when the perpetrator is still at large or is unidentified, may incorporate a broader definition of "emergency" for purposes of a Confrontation Clause analysis. In that case, statements made by a victim to law enforcement officials after a shooting, while he lay bleeding

_____

7.  Louisiana Code of Evidence article 803(2) defines an "excited utterance" as a "statement relating to a startling event or condition" that "was made while the declarant was under the stress of excitement caused by the event or condition."

8.  The presence or absence of direct questioning by a police officer is not alone determinative of whether a statement made by a witness is testimonial in nature. As noted in *Davis v. Washington, supra*, 547 U.S. at 822 n.1, that decision does not mean to imply "that statements made in the absence of any interrogation are necessarily nontestimonial."

on the ground in a parking lot, were found to be non-testimonial for purposes of a Confrontation

Clause analysis. The Court further found that where the objective "primary purpose" in

procuring or providing an out-of-court statement is not to create an "out-of-court substitute for

trial testimony," the admissibility of the statement "is the concern of state and federal rules of

evidence, not the Confrontation Clause." *Id.* at 1155. In addition, the Court recognized that, in

making a determination regarding such objective "primary purpose," the "standard rules of

hearsay, designed to identify some statements as reliable, will be relevant." *Id.* Thus, the Court

went on to note that, traditionally, excited utterances which are elicited during or in relation to an

emergency or high-pressure situation are among those categories of exceptions to the hearsay

rule which take into account the perceived diminished capacity of the declarant to form a

falsehood and to have a testimonial purpose in providing the statement. *Id.* at 1157.

Accordingly, evaluating all of the facts in this case, the Court concludes that the statement by

Alanna Caston – which was admitted as an excited utterance and was made shortly after the

occurrence of the event – may not be seen, objectively, to have been testimonial in nature and, as

such, the trial court's admission of the girl's statement did not violate the petitioner's

Confrontation Clause rights under *Crawford* and its progeny, and such claim should therefore be

dismissed for lack of merit.

Finally, in addition to the foregoing, confrontation clause violations are clearly subject to

a harmless error analysis, *Davis v. Washington, supra,* 547 U.S. at 829, and the state trial court,

on post-conviction review, essentially concluded that even if a violation occurred in this context,

the error was harmless. In conducting a harmless error analysis, a federal court on habeas review

may not afford relief to a petitioner based upon a constitutional error "unless the error had a

substantial and injurious effect or influence in determining the jury's verdict." *Oliver v.*

*Quarterman*, 541 F.3d 329, 341 (5th Cir. 2008).  And in conducting this analysis:

> [T]he court considers: (1) the importance of the testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony; and (4) the overall strength of the prosecution's case against the defendant.  Of these, the strength of the prosecution's case is probably the single most important factor in determining whether the error was harmless.

*Clark v. Epps*, 359 Fed. Appx. 481, 485-86 (5th Cir. 2009).  *See also Jones v. Cain*, 600 F.3d 527,

540 (5th Cir. 2010) ("An error is harmless ... when the evidence of the defendant's guilt is

overwhelming").

In light of this standard, the determination of the state court that the admission of the

statement by Alanna Caston, even if error, was harmless under the circumstances was not an

unreasonable application of the law or an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding.  As noted by the Commissioner, Mr.

Richardson identified the petitioner as the person who, after having left the scene, returned

several minutes later and began shooting without provocation, hitting Mr. Richardson as he

stood on the porch of his residence talking on the telephone.  The petitioner does not dispute that

he fired the referenced shots.  Accordingly, the statements by Alanna Caston that "her daddy had

shot her step daddy" and that, "when he got out of the car, he immediately confronted her

stepfather and fired," are entirely cumulative of other undisputed testimony in the record and

may not be seen to have had a substantial and injurious effect or influence in determining the

jury's verdict.  Accordingly, the petitioner's Confrontation Clause claim should be rejected as

being without merit.

The Petitioner's Claim Regarding The Alleged
<u>Ineffective Assistance Of Trial Counsel Is Without Merit</u>

The petitioner next asserts that he was provided with ineffective assistance of counsel in several respects.  In this regard, a habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel"s errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel.  *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986).  The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy.  *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).  This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.  *Martin v. McCotter, supra*, 796 F.2d at 817.  Great deference is given to counsel's exercise of professional judgment.  *Bridge v. Lynaugh, supra*, 838 F.2d at 773; *Martin v. McCotter, supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless

25

must affirmatively demonstrate prejudice resulting from the alleged errors.  *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988).  To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.  *Strickland v. Washington, supra*, 466 U.S. at 693.  Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  *Martin v. McCotter, supra*, 796 F.2d at 816.  The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."  *Id.* at 816-17.  Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

As discussed below, the above showing is one that the petitioner cannot meet in the instant case.

A.      *Failure To Call Witnesses*

In this assignment of error, the petitioner asserts that his trial attorney failed to subpoena "important first hand witnesses to cross-examine them as to the veracity of relevant facts bearing critical significance upon 'Aggression', 'Self Defense' and 'Retreat.'"  Specifically, the petitioner asserts that his attorney should have called Gwendolyn Carney, who was with the petitioner on the date in question and "would have testified to petitioner's theory of defense, and told the true facts as the whole event unfold ... contrary to the testimony of Mr. Richardson."

*See* Rec. Doc. 1 at p. 19. In addition, the petitioner asserts that his attorney should have called Alanna's mother, Brenda Caston, who resided with Mr. Richardson and would allegedly have cast doubt upon the testimony of the victim by testifying that the petitioner did not engage in an abusive confrontation with her earlier in the day and "curse her out, as alleged by the victim." *Id.* Finally, the petitioner asserts that his attorney should have interviewed the above persons and Alanna Caston, "to determine if their stories corroborate[d]" each other. *Id.*

Notwithstanding the petitioner's assertions, "[c]laims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). For this reason, federal courts on habeas review require that a petitioner making a claim of ineffective assistance based upon an attorney's asserted failure to call a witness "demonstrate prejudice by 'nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense.'" *Id. (Citation omitted).*

In the instant case, other than naming the witnesses who he believes should have been called to testify, the petitioner has wholly failed to comply with these requirements. His mere assertion that Ms. Carney would have "told the true facts" does not provide any information regarding the content of the witness' testimony or confirm that the witness was available to testify or would have done so favorably to the petitioner. And whether Alanna's mother would have corroborated the testimony of Mr. Richardson regarding a prior confrontation between the mother and the petitioner on the date of the offense would have been of limited relevance and of

limited material value when viewed in the context of the case as a whole.  Moreover, the

petitioner's assertion that his attorney should have determined whether the "stories" of these

witnesses "corroborate[d]" each other does not suggest that these witnesses would have provided

testimony "favorable to a particular defense."  In fact, although not addressed by the petitioner, it

is likely that these witnesses, had they been called, would have provided additional testimony

damaging to the petitioner's case, thereby justifying the strategic decision of counsel not to

present their testimony.  Accordingly, the petitioner has not shown any deficiency in the

performance of his attorney in this regard, and this claim should be rejected.[9]

B.      *Failure To Investigate.*

In this assignment, the petitioner complains of his attorney's failure to more vigorously

pursue information regarding forensic testing of certain items of evidence found at the scene of

the offense, notably a beer can, a knife, and a purported piece of broken glass that Mr.

Richardson allegedly utilized against the petitioner.  In addition, the petitioner complains

regarding his attorney's failure to obtain the audio recording of the 911 telephone call which Mr.

Richardson made prior to or contemporaneously with the shooting.  This claim is clearly without

merit.

---

9.  Although the petitioner makes a conclusory assertion that his attorney failed to interview witnesses such as Gwendolyn Carney, Brenda Caston and Alanna Caston, this assertion is not established in the record and, in fact, the state court record suggests that the petitioner's attorney expended substantial effort in directing an investigator to be available to the petitioner and to contact persons with potential information favorable to the accused.  *See* Tr. Rec. at p. 112 (where the petitioner's attorney indicated that an investigator was available to the petitioner and had in fact contacted witnesses identified by the petitioner), p. 116 (where the petitioner's attorney indicated that an investigator was available to the petitioner), and p. 217 (where the petitioner's attorney indicated that the attorney had "taken an investigator, devoted the full resources of [the] office ... [and] sent them out on multiple wild goose chases" at the petitioner's request).

First, with regard to the petitioner's claim regarding testing of the referenced piece of glass, it is undisputed that police officers did not recover the referenced piece of glass at the scene of the offense. Thus, there can be no complaint regarding a failure to pursue forensic testing relative thereto. Nor is there any basis for the petitioner's claim that his attorney did not emphasize the failure of police officials to collect the purported piece of glass. To the contrary, the record reflects that the petitioner's attorney repeatedly pointed out the failure of police officials to locate or collect any pieces of glass at the scene, and the attorney sought thereby both to discredit the police investigators and to call into question the testimony of Mr. Richardson that he had picked up a piece of glass on the night of the offense.

Further, with regard to forensic testing of the referenced beer can, there has been no showing that this item of evidence had any relevance to the petitioner's case, and the petitioner concedes as much. A police investigator testified merely that he observed the can at the scene and collected it as a potential object of evidence. There was no effort by the prosecution or defense at trial to attach any significance to this item or to connect it to the commission of the offense. Further, the record reflects that the referenced beer can was in fact tested for latent fingerprints, and no prints were found. *See* Tr. Rec. at p. 63. Thus, the petitioner suffered no prejudice as a result of any alleged failure to pursue forensic testing in connection therewith. Even the petitioner acknowledges that the beer can "had no relevance," *see* Rec. Doc. 1 at p. 20. Accordingly, his claim in this regard must be rejected.

The petitioner next complains regarding the asserted failure of his attorney to obtain fingerprint and DNA analysis of the knife found on the floor of the victim's residence. According to the petitioner, such analysis would have disclosed Mr. Richardson's fingerprints on

the knife handle and the petitioner's DNA on the blade, thereby corroborating the petitioner's contention that Mr. Richardson obtained and utilized the knife in the initial encounter and cut the petitioner with it. Notwithstanding, it appears from the record that a fingerprint analysis of the referenced knife was in fact undertaken, and this test disclosed no latent fingerprints on the knife. *See* Tr. Rec. at p. 63. Accordingly, the petitioner has no viable claim in this regard. Further, as for proposed DNA testing of the referenced knife, the petitioner merely speculates regarding what such a test may have revealed. A petitioner, however, who alleges a failure to investigate on the part of counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). A petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 Fed. Appx. 886, 890 (5th Cir. 2007). The petitioner cannot meet this test in this case. Mere speculation regarding what a DNA analysis may have shown is not sufficient to establish deficient performance on the part of the petitioner's attorney. *See Moawad v. Anderson, supra,* 143 F.3d at 948 (rejecting a claim of alleged deficient performance for failure to test for "powder burns" where the petitioner "merely asserts that there might have been powder burns"); *James v. Director, TDCJ-CID,* 2009 WL 484987, *3 (E.D. Tex. Feb. 26, 2009) (rejecting a petitioner's argument regarding the failure to undertake testing as speculative). Moreover, it is likely that the petitioner's attorney made the reasonable strategic decision not to undertake DNA testing because such testing, had it resulted only in an identification of the victim's blood, would have in fact incriminated the petitioner as the person who committed the charged offenses. *See Moawad v. Anderson, supra* (recognizing that the results of testing in that

case may have discredited the petitioner's defense); *Chandler v. Marshall County Correctional Center*, 2010 WL 3717231, *4-5 (N. D. Miss. Sept. 14, 2010) (noting that testing may have resulted in evidence unfavorable to the petitioner). On this showing, therefore, the petitioner's claim must fail.

Finally, the petitioner asserts a complaint regarding his attorney's failure to obtain a copy of the 911 recording which, according to the petitioner, "would have recorded gun shots and would have contradicted the alleged victim statements that shots ranged out through an open door while he was on the phone with police." *See* Rec. Doc. 1 at p. 21. Once again, however, this assertion in entirely speculative, and the petitioner does not provide the Court with either a copy of the 911 recording or a transcription thereof. Nor is it clear what the sound of "recorded gun shots" on the 911 tape would have shown or how it would have contradicted the testimony of Mr. Richardson or otherwise aided the defense. Accordingly, the petitioner's claim must fail as to this claim as well.

C.      *Failure To Impeach States's Witnesses.*

The petitioner next contends that his attorney failed to effectively impeach the testimony of the victim, Alvin Richardson, by pointing out inconsistencies between Richardson's testimony at trial and prior statements provided to police by Richardson and Alanna Caston. Notably, the petitioner seeks to raise questions regarding whether the initial telephone conversation between Richardson and the petitioner was threatening, whether Richardson knew that the petitioner was coming to the house to inflict harm and, consequently, armed himself with a knife to prepare for the petitioner's arrival, and whether Richardson then used the knife to cut the petitioner during the initial confrontation. Notwithstanding, it appears from the record that the petitioner's

attorney did in fact cross-examine Richardson with regard to these aspects of his testimony, seeking to leave an impression in the jury's mind that Richardson was preparing for a physical confrontation with the petitioner and may have been the aggressor during the initial encounter. It further appears that there was little more that the petitioner's attorney could or should have done. Although there may have been inconsistencies between (1) the initial statements of Richardson and Alanna Caston to police officers, and (2) Richardson's subsequent testimony at trial, these inconsistencies do little to deflect from the essential fact that the petitioner departed the scene after the initial encounter and so cannot legally claim self-defense or point to the initial aggressive conduct of Richardson to justify returning and shooting the victim. Thus, it appears that engaging in a side-by-side comparison of Richardson's testimony with prior statements, simply to point out irrelevant inconsistencies between them, would have done little to help the defense. This is because, whether Richardson anticipated a violent encounter with the petitioner and so armed himself beforehand with a knife or a piece of glass, which he thereafter used in response to an initial swing by the petitioner, was ultimately irrelevant in light of the petitioner's subsequent departure and return, armed with a deadly weapon. This claim, therefore, is without substantive merit.

D.    *Failure To Highlight Potential Favorable DNA Evidence And Perjury By A Witness.*

In a claim similar to one asserted above, the petitioner complains that his attorney was ineffective for failing to point out to the jury (1) that fingerprint and DNA evidence, had it been obtained, may have been favorable to the defense, and (2) that Alvin Richardson provided false testimony which differed from his original statement. As previously noted, however, the knife found at the scene was in fact subjected to fingerprint analysis, and no latent prints were found.

And with regard to DNA evidence, although the petitioner asserts that his attorney should have brought forth that "if the [knife] was tested for DNA, it would have revealed that the blood on the evidence match[ed] that of petitioner," *see* Rec. Doc. 1 at p. 22, this would have done no more than point out to the jury a question regarding an essentially irrelevant detail, *i.e.*, whether Richardson took a swing at the petitioner while holding a small knife or holding a piece of glass during the initial encounter. As noted above, however, Richardson's act in taking a swing at the petitioner, whether with a knife or piece of glass, does nothing to deflect responsibility from the petitioner or support the petitioner's assertion of self-defense after he left the scene, procured a weapon, and subsequently returned.

In addition, the petitioner points to his attorney's failure to point out discrepancies – which the petitioner refers to as "perjury" or falsehoods – between Mr. Richardson's statement to police and his testimony on the stand, notably that Mr. Richardson informed police officers that the initial telephone call with the petitioner had included a threat that the petitioner was coming to do harm to Mr. Richardson, whereas Mr. Richardson testified at trial that the conversation had not been threatening and that the petitioner had simply said, "wait a minute – hold on for a moment – I will be there," after which the petitioner arrived at Mr. Richardson's house and precipitated the initial encounter. In addition, the petitioner apparently refers to Mr. Richardson's statement to police that, upon return, the petitioner fired into the "open door" of the residence whereas Mr. Richardson testified at trial that the petitioner fired as Mr. Richardson stood on the outdoor porch of the residence. According to the petitioner, his attorney should have brought forth these falsehoods by Mr. Richardson so as to attack the victim's credibility. Notwithstanding, the Court is unable to see how the petitioner would have benefitted from this

line of questioning. Specifically, the noted discrepancies, while perhaps available to point out small inconsistencies in the witness' recount of the incident, do not go to the ultimate issue of the absence of legal or factual justification for the petitioner's actions in returning to Mr. Richardson's residence and shooting the victim after the initial confrontation was over. Thus, emphasizing these discrepancies would have accomplished nothing more than eliciting additional testimony regarding the petitioner's wrongful and legally unjustified conduct. The petitioner's contention in this regard, therefore, must be rejected.

E.     *Failure To Suppress Subsequent Out-Of-Court Statement To Police By Alanna Caston.*

Finally, the petitioner asserts that his attorney provided ineffective assistance by failing to suppress an out-of-court statement which Alanna Caston provided to a police detective at the station after the incident, purportedly without the presence of an adult or legal guardian. This contention is misplaced. In the first place, the petitioner acknowledges that the referenced statement was not admitted at trial and, accordingly, there was no legal or factual basis for its suppression. Further, the petitioner's sole complaint relative to the referenced statement is apparently that it was provided by the youthful witness in the absence of a responsible adult. However, the case cited by the petitioner in support of this proposition, *State v. Interest of Dino*, 359 So.2d 586 (La. 1978), addresses only statements obtained during police questioning of an unaccompanied juvenile when the juvenile is thereafter charged with committing a criminal offense. In the instant case, however, Alanna Caston was simply a witness to the events transpiring on November 7, 2003, and she voluntarily provided a statement to police which implicated the petitioner, not herself. Further, the *Dino* decision has since been overruled in any event. *See State v. Fernandez*, 712 So.2d 485, 489 (La. 1998). The petitioner, therefore, does

not have a legal basis for this complaint. As previously noted, his attorney did in fact object and seek to exclude testimony at trial regarding Alanna's initial hearsay statement to police officials at the scene of the incident, and the trial court determined that that statement was admissible as an excited utterance. There is no deficiency on the part of the petitioner's attorney in failing to seek suppression of a statement that was not even admitted at trial.

### The Petitioner's Claim Regarding The Trial Court's Denial Of The Petitioner's Motion To Enroll As Co-Counsel Is Without Merit

Pursuant to a *pro se* Motion to Act as Co-Counsel filed in March, 2005, the petitioner requested that he be "granted leave to act as co-counsel," and he asserted therein that he was "entitle[d] to defend himself and to have the assistance of counsel." This Motion was denied by the trial judge on March 22, 2005. Thereafter, upon commencement of trial on August 2, 2005, the petitioner was allowed to address the court, and he expressed a general dissatisfaction with the actions of his appointed attorney. The petitioner stated that, "from day one," he had requested "another attorney," that his attorney had not been adequately representing him, that he didn't need his attorney to just "stand here," and that he did not "want" and could not "accept" his appointed attorney. *See* Tr. Rec. at pp. 212-14. Notwithstanding, the petitioner at no time requested to dispense with counsel altogether and to represent himself at trial. In fact, he acknowledged in open court during the referenced diatribe that he was "not legally enough inclined to defend [him]self." *Id.* Instead, it appears that the petitioner principally wanted the court to appoint him a new attorney with whom he did not have a contentious relationship.

Pursuant to *Faretta v. California*, 422 U.S. 806, 807 (1975), a criminal defendant has an unquestioned right to represent himself during his criminal trial. However, the exercise of the right must be "clear and unequivocal," *see, e.g., United States v. Cano*, 519 F.3d 512, 516 (5th

Cir. 2008), and most courts require that a defendant exercise this right "in a timely manner." *See Martinez v. Court of Appeal of California*, 528 U.S. 152, 162 (2000). In addition, *Faretta* does not require that a trial judge permit "hybrid representation" of the type requested by the petitioner, *i.e.*, representation by both the petitioner and an attorney. *See Mckaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (finding that *Faretta* does not require a trial judge to permit "hybrid" representation); *United States v. Whitman*, 252 F.3d 436 (5th Cir. 2001) (upholding a federal conviction where the trial court denied a similar motion for hybrid representation). *See also United States v. Cano*, *supra,* 519 F.3d at 516 (concluding, where the petitioner requested permission "to engage in hybrid representation whereby he and his attorney would act as co-counsel," that "[t]here is no constitutional right to such form of representation"). In the instant case, the petitioner's March, 2005, motion was clearly characterized as a motion to act as "co-counsel." Accordingly, there was no constitutional error in the failure of the trial court to grant this motion. Further, the petitioner's oral assertions on the morning of trial were not a clear and unequivocal invocation of his right to represent himself. Accordingly, the state court's resolution of this issue was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

The Petitioner's Claim Regarding
<u>Prosecutorial Misconduct Is Without Merit</u>

Finally, the petitioner asserts that the State in this case colluded with Mr. Richardson to present false evidence to the jury which went uncorrected. Specifically, the petitioner focuses in his memorandum solely upon a question raised at trial regarding whether Mr. Richardson utilized a piece of broken glass or a knife during the initial physical confrontation on the night of the offense. According to the petitioner, the State was aware that Mr. Richardson had used a

36

knife, yet allowed Mr. Richardson to testify that he had used a piece of glass.  This contention is without merit.

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence of false testimony that, although not solicited, is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  *See also Giglio v. United States*, 405 U.S. 150, 153 (1972).  The Supreme Court has also stated that a new trial is dictated in this context when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury.  *Giglio v. United States*, *supra*, 405 U.S. at 154.  To find a violation of due process in this context, the petitioner must show that (1) the evidence was in fact false, (2) the prosecution knew it to be false, and (3) the evidence was material.  *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997).  It is not enough that the testimony is challenged by another witness or is inconsistent with prior statements.  *United States v. Brown,* 634 F.2d 819, 827 (5th Cir. 1981).  False evidence or perjury is material, and a new trial is required, if "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993) (citation and internal quotation marks omitted).  *See also Giglio v. United States, supra*, 405 U.S. at 154.  However, "courts have been extremely reluctant to find a deprivation of due process when the prosecution has provided the defense with the necessary information and it can utilize the information, but decides, for tactical reasons, not to use such information."  *United States v. O'Keefe, supra*, 128 F.3d at 894.

First, as previously noted, the resolution of the referenced glass/knife question was not ultimately material to the central issue at trial, specifically, the issue whether the petitioner's

subsequent use of a firearm during the second separate encounter was justified by self-defense. Further, the petitioner has failed to make any showing that Mr. Richardson in fact presented false testimony when he asserted at trial that he utilized a piece of broken glass to swing at the petitioner on the night of the offense. This testimony was consistent with Mr. Richardson's statement to police investigators on the night of the incident and was not deviated from thereafter. Although the purported piece of glass was not located at the scene of the offense, it is undisputed that police crime scene investigators did not search for a piece of broken glass on the night of the offense and that they limited their search principally to the interior of the residence. And although Alanna Caston may have informed police officers that Mr. Richardson armed himself with a knife prior to or during the initial encounter, *see* Rec. Doc. 1 at p. 33, a mere conflict between the factual recitations provided by multiple witnesses does not impute to the prosecution a knowledge that any one such recitation is false. *See United States v. Brown, supra*, 634 F.2d at 827. Contrary to the petitioner's assertion in brief, Mr. Richardson did not testify at trial that he utilized a knife during the initial confrontation. Accordingly, the petitioner has failed to establish that false testimony was in fact presented in connection with this witness or that, if so, the testimony was known to be false and was such as prejudiced the defense. Moreover, as previously discussed, the petitioner's attorney was aware of the disparities in the statements of witnesses, sought to highlight to the jury the disputed question regarding whether Mr. Richardson used a piece of glass or a knife, and sought to influence the jury with the unresolved nature of this question. In any event, however, as found by the state court Commissioner, the glass/knife issue was not of particular relevance or materiality to the petitioner's ultimate assertion of self-defense, and there is no reasonable likelihood that further

clarification relative to this issue would have affected the jury's determination. Accordingly, this Court cannot conclude, to any degree of reasonable likelihood, that Mr. Richardson's testimony that he used a piece of glass instead of a knife, if indeed a false statement, would have altered the jury's determination of guilt in this case. Accordingly, this claim as well does not involve an unreasonable application of clearly established federal law and must fail as a result.

## Certificate Of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that

reasonable jurists would not debate the denial of the Petitioner's § 2254 application or the correctness of the procedural or substantive ruling. Accordingly, it is appropriate that, in the event that the Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

RECOMMENDATION

It is recommended that the petitioner's Motion to Amend Or Supplement § 2254 Petition and Hold Petition in Abeyance to Exhaust State Remedies (Rec. Doc. 14) be denied. It is further recommended that the petitioner's application for habeas corpus relief be dismissed, in part as barred by procedural default and in part as being without substantive merit. It is further recommended that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on May 2, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**